UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:25-cv-00906-MR

| | | |
|---|---|---|
| **SCOTTY ROY HILLS,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**SCOTT HOWELL,**<br><br>**Defendant.** | ) | **<u>MEMORANDUM OF DECISION AND ORDER</u>** |

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment. [Doc. 22].

## I. BACKGROUND

Pro se Plaintiff Scotty Roy Hills ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at the Lumberton Correctional Institution in Lumberton, North Carolina. On November 13, 2025, he filed this lawsuit pursuant to 42 U.S.C. § 1983 by unverified Complaint against Defendants Scott Howell, Sheriff of Anson County, North Carolina; John Green, Captain at the Anson County Jail (the "Jail"); and Luarie Hildriff, Jail Sergeant. [Doc. 1]. Plaintiff claimed that he was unlawfully detained at the Jail after a 90-day deadline for extradition to Indiana expired. [Doc. 1]. Plaintiff's individual and official capacity Fourth Amendment false

imprisonment claims against Defendant Howell survived initial review as not clearly frivolous. [Doc. 6]. Plaintiff's remaining claims and the remaining Defendants were dismissed. [Id.].

On August 7, 2026, Defendant moved for summary judgment. [Doc. 22]. He argues that summary judgment should be granted because he did not violate Plaintiff's constitutional rights and because he is entitled to qualified immunity. [Doc. 23]. In support of his summary judgment motion, Defendant submitted a brief, Plaintiff's grievance records, and various records related to Plaintiff's arrest, detention, and extradition. [Docs. 23, 23-1 to 23-9].

On August 10, 2026, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 24]. Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials." [Id. at 2-3 (citing Fed. R. Civ. P. 56(c)(1)(A))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3 (citing Fed. R. Civ. P. 56(c)(4))].

On August 31, 2026, the Court granted Plaintiff's motion for an extension of his response deadline and ordered that Plaintiff had until September 8, 2026, to respond. [Doc. 25; 8/31/2026 Text Order]. The extended deadline to respond to Defendant's summary judgment motion has expired, and Plaintiff has not responded to Defendant's motion.

As noted, Plaintiff's Complaint was not verified or otherwise submitted under penalty of perjury and, therefore, cannot be considered for its evidentiary value here. See Goodman v. Diggs, 986 F.3d 493, 498-99 (4th Cir. 2021) (holding that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge"). Thus, in terms of evidentiary forecast, the Defendant's is unrefuted.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 175, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, (2007).

## III. FACTUAL BACKGROUND

The forecast of evidence shows the following.

On March 16, 2025, Plaintiff was arrested and charged in Anson County for possession of a stolen vehicle. [Doc. 23-2 at 2]. A Magistrate Judge issued a $30,000 secured bond and Plaintiff was ordered detained at

the Jail. [Doc. 23-3 at 2]. Attorney Jonathan Arrowood was appointed to represent the Plaintiff. [Doc. 23-4 at 3, 5].

On March 20, 2025, the Indiana Department of Correction issued a Warrant for Retaking Offender ("Extradition Warrant") alleging the Plaintiff had violated the conditions of his parole. [Doc. 23-5 at 2]. The Extradition Warrant "ordered that [Plaintiff] … be held until such time as [Plaintiff] may be placed in the custody of an agent of the Indiana Department of Correction." [Id.].

On March 24, 2025, the North Carolina Department of Adult Correction issued an Authority to Detain and Hold ("ADH"), which "authorized and directed" any officer authorized to detain and hold to detain and hold the Plaintiff pursuant to N.C. Gen. Stat. § 148-65.8. [Doc. 23-6 at 3]. On March 25, 2025, after service of the Extradition Warrant, Anson County District Court Judge Angela Woodburn ordered that Plaintiff's bond on the Possession of a Stolen Motor Vehicle charge be unsecured. [Doc. 23-7 at 2]. As of that day, therefore, Plaintiff was only being held on the Extradition Warrant.

Beginning on March 24, 2025, Plaintiff began filing grievances at the Jail seeking, among other things, to "fight [his] extradition warrant," complaining about and purporting to fire Arrowood, requesting visits with

Arrowood, and complaining about not yet appearing before a judge. [Doc. 23-8 at 3-7, 11, 13, 16-19, 22-24, 25]. In response, the grievance officer(s) forwarded Plaintiff's requests to Arrowood and advised Plaintiff that he needed to direct his issues to the Court or his attorney, not the Jail. [Id.].

On July 9, 2025, after more than 90 days had passed since bond on Plaintiff's North Carolina charge was unsecured, Plaintiff submitted a grievance complaining that he was being held passed the 90-day deadline and asking who would compensate him for the holdover. [Doc. 23-8 at 28]. The grievance officer responded the next day as follows:

> … I understand you are frustrated but this has nothing to do with the Jail. Our job is to hold you in custody under conditions of release set by the court. The only way I could let you go is you bond out, or the court modifies your release conditions. I spoke with Arrowood yesterday and asked him to come speak with you so you had some peace of mind. He advised me to let you know he was working on it and would talk to you. I don't know when.

[Doc. 23-8 at 28].

On July 15, 2025, Plaintiff appeared with his attorney, Arrowood, in court and the Indiana Extradition Warrant was dismissed. [See Doc. 23-9 at 2]. Plaintiff was released later that day. [Id.].

## IV. DISCUSSION

A plaintiff's failure to respond to a summary judgment motion may constitute waiver or abandonment of a claim. Orbit Corp. v. Fedex Ground Package Sys., Inc., 2016 WL 6609184, at *15 (E.D. Va. Nov. 8, 2016) (collecting district court cases); Morgan v. City of Charlotte, No. 3:22-cv-00003-KDB-DCK, 2023 WL 4002524 (W.D.N.C. Jun. 14, 2023) (collecting cases); Estate of Edgerton v. UPI Holdings, Inc., No. CCB-09-1825, 2011 WL 6837560, at *4 (D. Md. Dec. 28, 2011). Because Plaintiff has abandoned his claim by failing to respond to Defendant's motion, the Defendant is entitled to summary judgment on this ground.

In addition, Defendant Howell is entitled to summary judgment because there is no forecast of evidence from which a reasonable jury could conclude he violated Plaintiff's constitutional rights in his official or individual capacity.[1]

[1] On initial review, the Court preliminary allowed Plaintiff's claims against Defendant Howell to proceed under the Fourth Amendment. [Doc. 6 at 4-5]. It is unclear, however, whether Plaintiff's claims implicate the Fourth or Fourteenth Amendment. See Robles v. Prince George's Cty, Md., 302 F.3d 262, 268 (4th Cir. 2002) ("[T]his court has rejected any concept of a continuing seizure rule[.]… Once the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply."); Luckes v. Cty of Hennepin, Minn., 415 F.3d 936 (8th Cir. 2005) (claim based on extended detention more properly analyzed under the framework of the Due Process Clause of the Fourteenth Amendment where plaintiff was arrested pursuant to valid bench warrant). Cf. Rio v. Jenkins, 390 F.Supp.3d 714, 720, 722 (W.D. Va. Jul. 15, 2019) (concluding Fourth Amendment applies to claim of plaintiff detainee who alleged he was improperly held on ICE detainer after otherwise subject to release on state conviction after having served

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066 (quoting Monell, 436 U.S. at 691, 98 S.Ct. at 2036). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694, 98 S.Ct. at 2037-38).

Here, there is no forecast of evidence that a Sheriff's Office employee acted pursuant to an official policy or custom in causing the alleged constitutional violation. Rather, the forecast shows that Plaintiff remained

state sentence). The Court, however, need not decide here because the outcome is the same regardless.

detained at the Jail pursuant to the Extradition Warrant and that the Jail was not authorized to release Plaintiff without a court order directing his release. See Baker v. McCollan, 443 U.S. 137, 143-44 (1979) (holding that arrest and detention based on facially valid warrant does not violate the Constitution). That is, the forecast shows that Plaintiff's continued detention was not the result of a Sheriff's Office policy preventing his release, but rather the Jail's lack of legal authority to release him. As such, there is no genuine issue for trial on Plaintiff's official capacity claim against Defendant Howell.

To establish individual capacity liability under 42 U.S.C. § 1983, a plaintiff "must affirmatively show that the official charged acted personally in the deprivation of [his] rights." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (cleaned up); see Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (citation omitted). Mere knowledge of a deprivation is insufficient. Williamson, 912 F.3d at 171. As such, the doctrine of respondeat superior does not apply in actions brought under § 1983. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). While personal involvement is required, it need not be "hands-on." Riddick v. Barber, 109 F.4th 649 (4th Cir. 2024). "Instead, the 'requisite causal connection' between defendant and violation can be established if the defendant 'set[s] in motion a series of acts by others

which the actor[ ] know[s] or reasonably should know would cause others to inflict the constitutional injury.'" Id. at 649-50 (citing Amisi v. Brooks, 93 F.4th 659, 670 (4th Cir. 2024) (internal quotation marks omitted) (establishing liability for a person who "subjects, or causes to be subjected," another person to a deprivation of constitutional rights)).

The forecast of evidence shows that Plaintiff was held at the Jail for more than 90 days after his bond on the North Carolina charge became unsecured. The forecast also shows that, after Plaintiff filed a grievance complaining about the alleged holdover, he appeared in court with his attorney, the Extradition Warrant was dismissed, and Plaintiff was released from detention later that day. From this forecast, no reasonable jury could conclude that Defendant Howell was personally involved in Plaintiff's continued detention or otherwise caused Plaintiff to be subject to a deprivation of his constitutional rights through the acts of others. In fact, no constitutional violation by anyone has been shown. As such, there is no genuine issue for trial on this claim.

Because there is no genuine issue for trial, the Court will grant summary judgment for Defendant Howell. Moreover, because the forecast of evidence does not support that a constitutional right was violated,

Defendant Howell would also be protected by qualified immunity. See E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018).

## IV. CONCLUSION

For the reasons stated herein, the Court will grant Defendant's motion for summary judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [Doc. 22] is **GRANTED**, and this action is hereby **DISMISSED WITH PREJUDICE**.

The Clerk is instructed to terminate this action.

**IT IS SO ORDERED**.

Signed: November 9, 2026

Martin Reidinger
Chief United States District Judge